UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

‾‾‾‾‾

WILLIAM JACOB SMITH, SR., # 200445,)

              Plaintiff,       )     Case No. 1:08-cv-661

v.                       )     Honorable Paul L. Maloney

KURT JONES, et al.,       )     **REPORT AND RECOMMENDATION**

              Defendants.   )

_____)

       This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff is currently an inmate at the Chippewa Correctional Facility (URF). His complaint concerns the conditions of his confinement at the Carson City Correctional Facility (DRF) between May 6, 2005 and November 16, 2005. Plaintiff named DRF's former Warden, Kurt Jones, and Resident Unit Officer (RUO) Ward as defendants. He sued defendants in their individual and official capacities. He seeks an award of monetary damages and declaratory and injunctive relief.

       Plaintiff alleges that Warden Jones violated his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause by allowing him to be exposed to second-hand tobacco smoke (ETS). Further, he alleges that defendant Jones "retaliated" against him in violation of his First Amendment rights by transferring him to another prison. Plaintiff alleges that on November 13, 2005, RUO Ward violated his First Amendment rights by conducting a "retaliatory" cell search and violated his rights under the Fourteenth Amendment's Due Process Clause when he damaged plaintiff's typewriter and seized plaintiff's personal property. Plaintiff asks that the court, in its discretion, exercise supplemental jurisdiction over his purported state-law claims.

The matter is before me on defendants' motions for summary judgment (docket #'s 22, 36). Plaintiff requested and received multiple extensions of time within which to file his response. (docket #'s 29, 32, 40, 43, 44, 46, 47, 52, 54). On April 27, 2009, the court entered an order granting plaintiff's fourth motion for an extension of time. (4/27/09 Order, docket # 57). The same order established a May 11, 2009 deadline for plaintiff to file his response. (*Id.*). Plaintiff filed his response (docket #'s 62, 63), and defendants' motions are ready for decision. For the reasons set forth herein, I recommend that defendants' motions for summary judgment be granted, that the court, in its discretion, decline to exercise supplemental jurisdiction, and that an order implementing these recommendations be entered. I further recommend that a separate and final judgment be entered in defendants' favor on all plaintiff's federal claims.

## **Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Synbrandt v. Home Depot U.S.A., Inc.*, 560 F.3d 553, 557 (6th Cir. 2009). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Cady v. Arenac County*, 574 F.3d 334, 339 (6th Cir. 2009). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor

of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Reed v. International Union, United Aerospace & Agric. Implement Workers of Am.*, 569 F.3d 576, 579 (6th Cir. 2009).

## Proposed Findings of Fact

The following facts are beyond genuine issue. Plaintiff is in the custody of the Michigan Department of Corrections (MDOC) where he is serving a sentence of 13-to-20 years' imprisonment for burning a dwelling house, a life sentence for armed robbery, and a non-parolable

life sentence for first-degree murder.  He was an inmate at the Carson City Correctional Facility (DRF) from May 6, 2005 through November 16, 2005.  (Plf. Aff., ¶¶ 4, 15, docket # 63).

During plaintiff's first month of confinement at DRF, he  was housed in the intake unit and "paired with" a non-smoker.  (Compl. at 1).[1]  In June 2005, plaintiff was transferred to another DRF housing unit and he spent one day assigned to a cell that was not designated as tobacco free.  (*Id.* at 2).  All cells at DRF are designed as non-smoking in accordance with MDOC Policy Directive 01.03.140.  Under no circumstances are prisoners allowed to smoke in the housing units.  (Jones Aff. ¶ 1 and Attachment).  Tobacco free cells are designed to further reduce the impact on a non-smoking prisoner who happens to share a cell with a prisoner who smokes.  (*Id.*).  Plaintiff states that he is a type one diabetic, and that he suffers from diabetic neuropathy, Raynaud's disease, hypertension, and acid reflux disease.[2]

Plaintiff states that during the summer months at DRF he did not encounter ETS in his cell.  The prison's windows were open and air circulation was further enhanced by industrial fans.  Plaintiff did encounter ETS in the dayroom and bathroom areas.  (Compl. at 2-3).

On October 17, 2005, plaintiff sent a letter to Warden Kurt Jones regarding Michigan's Indoor Clean Air Act.  (Plf. Aff., ¶ 5).  On October 27, 2005, the Warden Jones provided plaintiff with a response.  (*Id.*, ¶ 6).  During his tenure as DRF's warden, Jones directed prison staff

---

[1]Plaintiff's complaint is verified under penalty of perjury.  The portions of his pleading satisfying the requirements of Rule 56(e) of the Federal Rules of Civil Procedure are considered as his affidavit in opposition to defendants' motions for summary judgment.  *See El Bey v. Roop*, 530 F.3d 407 (6th Cir. 2008); *Weberg v. Franks*, 229 F.3d 514, 526 n/ 13 (6th Cir. 2000).  Legal conclusions, whether asserted by a party in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial.  *See Doe v. Magoffin County Fiscal Ct.*, 174 F. App'x 962, 966 (6th Cir. 2006).

[2]Plaintiff did not submit any medical records in support of his claims.

to take aggressive disciplinary action against prisoners who violated the rules by smoking in areas where it was prohibited. Periodic air quality assessments revealed that DRF's the air quality was within normal guidelines. (Jones Aff., ¶ 4 & attachments). On October 23, 2005, plaintiff drafted a grievance against Warden Jones regarding the prison's air quality. This grievance was received by the grievance coordinator on October 25, 2005, and it was assigned number DRF-05-10-1490-03C. (docket # 7, Ex. I). Plaintiff pursued this grievance through all three steps of the MDOC's grievance process, and he received the Step III denial of his grievance on or about April 5, 2006.

RUO Ward's job duties included performing at least three cell searchers per day. (Ward Aff. ¶ 3, docket # 27). Ward conducted a search of plaintiff's cell on November 13, 2005. He had no knowledge of plaintiff's grievance against Warden Jones. (*Id.* ¶¶ 3, 4). RUO Ward seized several items of plaintiff's property which appeared to be contraband. These included "a walkman with sanded numbers, headphones with sanded numbers and an altered cord, two broken round hangers, broken hobbycraft scissors, a small white wire, eating utensils from the chow hall and one picture door card of another prisoner, among other items." (*Id.* ¶ 3). Plaintiff states that during this search RUO Ward broke his typewriter's lid. (Compl. at 4). Ward denies damaging plaintiff's typewriter. (Ward Aff. ¶ 3). While plaintiff's hearing on the seized items was pending, he drafted two grievances against RUO Ward. (Plf. Aff., ¶ 12). On November 16, 2005, plaintiff received his hearing. The hearing officer found that fourteen of the eighteen items seized were contraband. (Ward Aff. ¶ 6). The few items that were not contraband were returned to plaintiff. (Plf. Aff., ¶ 14; Ward Aff. ¶ 6).

On November 16, 2005, plaintiff was transferred to the Riverside Correctional Facility (RCF), another state prison at the same security level as DRF. (Plf. Aff., ¶ 15). Plaintiff's

transfer occurred at the request of RCF prison officials. (Jones Aff. ¶ 5 & attached Transfer Order). He was not transferred in retaliation for filing grievances. (Jones Aff., ¶ 5).

On November 18, 2005, the grievance coordinator received plaintiff's grievances against RUO Ward and assigned them numbers DRF 05-11-1619-19c and DRF-05-12-1728-17B. Plaintiff pursued these grievances through all three steps of the MDOC grievance process, receiving the Step III responses in April and May 2006. (docket # 7, Exhibits II, III). Plaintiff filed this lawsuit on July 11, 2008.

## Discussion

### I.     Mootness

Plaintiff's complaint concerns the conditions of his confinement at DRF. His claims for declaratory and injunctive relief are rendered moot by his current confinement at URF. *See Cardinal v. Metrish*, 564 F.3d 794, 789-99 (6th Cir. 2009); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

### II.     Eleventh Amendment Immunity

All plaintiff's claims for damages against defendants in their official capacities are barred by Eleventh Amendment immunity. The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The State of Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004)); *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.1986). A suit against a state officer in his or her official capacity is simply another way of

pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Defendants are entitled to judgment in their favor as a matter of law on plaintiff's claims for monetary damages against defendants in their official capacities.

### III. Eighth Amendment Claim of Deliberate Indifference to Serious Medical Needs Against Warden Jones

Plaintiff alleges that Warden Jones was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights under the Cruel and Unusual Punishments Clause by allowing plaintiff to be exposed to ETS.[3] In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention.[4] *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976); *see Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983).

---

[3]This type of claim is sometimes referred to as a "present injury" claim to distinguish it from the "future injury" type claim addressed in section IV.

[4]The Supreme Court has recognized that, "[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." *Rhoades v. Chapman*, 452 U.S. 337, 349 (1981).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. No reasonable trier of fact could find in plaintiff's favor on either component of his claim against defendant Jones.

The objective component of the Eighth Amendment standard requires that a plaintiff be suffering from a serious medical condition. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute a constitutional violation." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2005). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* A non-obvious need for medical care can satisfy the "serious" medical need requirement, but "the inmate must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Johnson v. Karnes*, 389 F.3d 868, 874 (6th Cir. 2005); *see Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). Moreover, the mere presence of a serious medical condition is insufficient to establish the objective component. The plaintiff must make "an 'objective' showing that the deprivation was 'sufficiently serious' or that the result of the defendant's denial was sufficiently serious." *Hudson*, 508 U.S. at 8; *see Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

Plaintiff falls far short of satisfying the objective component. He has not submitted evidence that he received constitutionally deficient medical care for any medical condition. He did not present evidence indicating that he required hospitalization or other emergency medical attention. Plaintiff did not submit any medical evidence regarding his condition during the period at issue. There is no medical evidence that plaintiff's health was adversely impacted by ETS exposure. *See Hanks v. Ramos*, No. 3:06-cv-195, 2009 WL 3156692, at * 4 (S.D. Ill. Sept. 29, 2009) ("Without professional medical indication that the ETS aggravated his hypertension, the only evidence [plaintiff provided was] his own speculative diagnosis" and that "uncorroborated and conclusory testimony [was] insufficient to defeat [defendants' motion for] summary judgment."). There is no evidence that defendant denied or delayed plaintiff's access to medical care. Warden Jones was a supervisor, not a healthcare provider. Liability of supervisory officers under 42 U.S.C. § 1983 cannot be based upon a *respondeat superior* theory. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006). Plaintiff has not presented evidence that defendant Jones caused an objectively serious deprivation. *See Clark-Murphy v. Foreback*, 439 F.3d 280, 286-87 (6th Cir. 2006). I find that no reasonable trier of fact could find in plaintiff's favor on the objective component of this Eighth Amendment claim against defendant Jones.

The second prong under Estelle requires a showing of "deliberate indifference" to plaintiff's serious medical need. The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The

Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted); *see Panton v. Nash*, 317 F. App'x 257, 259 (3d Cir. 2009). MDOC rules prohibited smoking in all housing units. Prisoners who smoked in violation of the rules were prosecuted and punished. Plaintiff was housed in a tobacco free cell. I find that no reasonable trier of fact could find in plaintiff's favor on the subjective component of this Eighth Amendment claim against defendant Jones.

### IV. Eighth Amendment Claim of "Future Injury" Against Warden Jones Based on ETS Exposure

Plaintiff' *pro se* complaint is not a model of clarity. He may be attempting to assert an Eighth Amendment claim against Warden Jones based on possible damage to his future health arising from the ETS exposure that occurred at DRF. *Helling v. McKinney*, 509 U.S. 25 (1993) is the seminal case in this area. In *Helling v. McKinney*, a Nevada prisoner alleged his Eighth Amendment rights under the Cruel and Unusual Punishments Clause had been violated by his double bunk assignment to a cell with another inmate who smoked five packs of cigarettes per day. The Supreme Court held that the prisoner had successfully alleged an Eighth Amendment violation by

claiming that the defendants had, with deliberate indifference, "exposed him to levels of ETS that pose[d] and unreasonable risk of serious damage to his future health." 509 U.S. at 35. The Supreme Court emphasized that on remand the prisoner would be required to prove both the subjective and objective elements necessary to prove an Eighth Amendment violation, and that a failure of evidentiary proof as to either element would entitle the defendants to judgment in their favor. *Id.* The Court reiterated that "while the Eighth Amendment applies to conditions of confinement that are not formally imposed as a sentence for a crime, such claims require proof of a subjective component, and that where the claim alleges inhumane conditions of confinement or failure to attend to a prisoner's medical needs, the standard for that state of mind is the 'deliberate indifference' standard of *Estelle v. Gamble*, 429 U.S. 97 (1976)." *Helling*, 509 U.S. at 29-30. The Court's discussion of the subjective component in *Helling v. McKinney* concluded with direction to the lower court that on remand "deliberate indifference" was to be determined in light of the current conduct and attitudes of prison authorities, and that adoption of smoking policies would "bear heavily on the inquiry." 509 U.S. at 36. The lower court's inquiry was also to take into consideration the realities of prison administration. *Id.* at 36-37. Shortly after *Helling*, the Supreme Court's *Farmer v. Brennan* decision made it clear that, "[A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 837.

*Helling v. McKinney* carefully outlined the objective component of a prisoner's Eighth Amendment future injury claim based on prison ETS exposure. The plaintiff must present

-11-

proof of exposure to unreasonably high levels of ETS.[5]  509 U.S. at 35.  "More than mere scientific

and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury

to health will be caused by exposure to ETS" is necessary to establish the objective component.  509

U.S. at 36.  "It also requires a court to assess whether society considers the risk that the prisoner

complains of to be so grave that it violates contemporary standards of decency to expose *anyone*

unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he

complains is not one that today's society chooses to tolerate."  *Id.*  Plaintiff has not presented

evidence on which a reasonable trier of fact could find in his favor on either the subjective or

objective components of this type of Eighth Amendment claim.  *Helling v. McKinney* did not

mandate smoke free prisons.  *See Scott v. District of Columbia*, 139 F.3d 940, 942 (D.C. Cir. 1998);

*see also Ozier v. Berghuis*, No. 1:08-cv-1203, 2009 WL 1559786, at * 3 (W.D. Mich. June 1, 2009)

(collecting cases); *Mansoori v. Lappin*, No. 04-3241-JAR, 2007 WL 401290, at * 9 (D. Kan. Feb.

1, 2007) ("[U]nder constitutional law, plaintiff is not entitled to a smoke free correctional facility.").

      Plaintiff was assigned to a tobacco-free cell.  Defendant Ward directed his

subordinates to enforce the applicable non-smoking policies.  It is well established that imperfect

enforcement of a non-smoking policies does not rise to the level of deliberate indifference.[6]  *See*

---

[5]"Plainly relevant to this determination" was the fact that plaintiff had been moved to a
different prison and was "no longer the cellmate of a five-pack-a-day smoker."  509 U.S. at 35-35.
The Supreme Court also observed that the prison had adopted a formal smoking policy restricting
smoking to certain areas and where wardens could, contingent on space availability, designate non-
smoking areas in dormitory sections.  The Court noted that the changed policies could make it
impossible for the plaintiff to prove that he would be exposed to an unreasonable risk with respect
to his future health or entitlement to an injunction.  *Id.* at 36.

[6]"Prisons, by definition, are places of involuntary confinement of persons who have
demonstrated proclivity for antisocial criminal, and often violent, conduct.  Inmates have necessarily
shown a lapse in ability to control and conform their behavior to the legitimate standards of society

*Talal v. White*, 403 F.3d 423, 427 (6th Cir. 2004); *Wilson v. Hofbauer*, 113 F. App'x 651, 652 (6th Cir. 2004); *Morrer v. Price*, 83 F. App'x 770, 773 (6th Cir. 2003); *see also McMurry v. Caruso*, No. 1:07-cv-905, 2009 WL 198519, at * 10 (W.D. Mich. Jan. 27, 2009) (collecting cases); *Johnson v. Goord*, No. 01 Civ. 9587(PKC), 2004 WL 2199500, at *17 (S.D.N.Y. Sept. 29, 2004) ("No system of enforcement, however, will be perfect, and prison officials cannot be held accountable under the Constitution for failing to extinguish every attempt to flout the [prison's] rules [regarding smoking]."). On the this record, no reasonable trier of fact could find in plaintiff's favor on the subjective component of "future injury" Eighth Amendment claim against defendant.

The evidence plaintiff presented on the objective component is likewise deficient. It was plaintiff's burden to present evidence that he had been exposed to unreasonably high levels of ETS and the exposure's significant adverse impact on plaintiff's future health. Plaintiff presented evidence that he experienced some ETS exposure during the months he was an inmate at DRF. Plaintiff's proofs are devoid of specifics as to which prisoners were smoking on which dates, how close such prisoners were in proximity to plaintiff and for how long, and what steps, if any plaintiff took to minimize his exposure either through movement or reporting the offending prisoner or prisoners. He did not submit any scientific evidence measuring or quantifying his level of exposure. *See Nali v. Michigan Dep't of Corrections*, No. 2:07-cv-255, 2009 WL 3052227, at * 9 (W.D. Mich. Sept. 21, 2009). Affidavits to the effect that "some exposure" occurred are insufficient to support this type of Eighth Amendment claim. *See Moses v. Rapelje*, No. 08-12161, 2009 WL 1133345, at

---

by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for the law or an appreciation of the rights of others." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

* 9 (E.D. Mich. Apr. 22, 2009) (collecting cases).  Furthermore, a prisoner's "exposure to smoke must cause more than mere discomfort or inconvenience." *Talal v. White*, 403 F.3d at 426.  Plaintiff did not present medical evidence that his exposure to ETS caused him anything beyond discomfort. *See Oliver v. Deen*, 77 F.3d 156, 159-61 (7th Cir. 1996) (An asthmatic inmate's assignment to cells with smoking inmates for 133 days resulting in ETS exposure which aggravated the plaintiff's asthma and necessitated his increased use of an inhaler failed to satisfy the objective component.); *see also Kelley v. Hicks*, 400 F.3d 1282, 1285 (11th Cir. 2005).  He did not present any scientific or statistical evidence regarding the seriousness of potential harm and the likelihood that such injury to health would actually be caused by exposure to ETS.  509 U.S. at 36; *see Larson v. Kempker*, 414 F.3d 936, 940 (8th Cir. 2005).  Moreover, it was plaintiff's burden to show that the risk he complains of is so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk" -- that "the risk of which he complains is not one that today's society chooses to tolerate." 509 U.S. at 36.  It is obvious from the wealth of case law in this area that the risk of which plaintiff complains of *is* one that today's society chooses to tolerate.  *See Oliver v. Deen*, 77 F.3d at 158; *see also Griffin v. DeRosa*, 153 F. App'x 851, 853 (3d Cir. 2005) (A prisoner's allegations that he had been exposed to ETS in inadequately ventilated restrooms because each time he entered the restroom he found eight-to-ten inmates smoking failed to allege unreasonably high levels of ETS contrary to contemporary standards of decency.); *Ozier v. Berghuis*, 2009 WL 1559786, at * 3; *Hankins v. Bethea*, No. CIV. A 0:05-3334, 2007 WL 172509, at * 6 (D. S.C. Jan. 18, 2007) ("Exposure to moderate levels is a common fact of contemporary life, and [p]laintiff has failed to present evidence to show that the amount of ETS he was exposed to during the relatively short [5-month] period of time set forth in his complaint was at such an unreasonably high level that it

violated contemporary standards of decency."); *Wester v. Raines*, No. 5:05 cv 160, 2006 WL 2644931, at * 5 (N.D. Fla. Sept. 14, 2006) ("[E]xposure to second-hand smoke is an ordinary consequence of everyday life for *non-prisoners* as office buildings, restaurants and other public facilities often have designated smoking areas at or near their entrance."); *Colon v. Sawyer*, No. 9:03-CV-1018, 2006 WL 721763, at * 9 (N.D.N.Y. Mar. 20, 2006) (An asthmatic prisoner's claim that "he [was] housed in a dormitory unit where smoking [was] permitted, and that he [was] subjected to ETS near the dining hall entrance and exit, as well as his speculation that such circumstances 'may result in catastrophic harm to him' simply [does] not describe conditions which rise to a level which today's society chooses not to tolerate."). In summary, I find that defendant Jones is entitled to judgment in his favor as a matter of law on all plaintiff's Eighth Amendment claims.

## V.     Due Process Claims Against RUO Ward

Plaintiff alleges that RUO Ward confiscated various items of his personal property and damaged plaintiff's typewriter while he was conducting the search. It is well established that a state prisoner asserting a procedural due-process claim arising from a random and unauthorized act of a state officer must first plead and prove the absence of an adequate state remedy. *See Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986); *Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *see also Morris v. Cason*, 102 F. App'x 902, 903 (6th Cir. 2004). If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant

to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).[7] The Sixth Circuit recognizes that Michigan's available post-deprivation remedies are more than adequate to compensate plaintiff for any loss of personal property suffered as a result of defendant Ward's alleged actions. *See Copeland v. Machulis*, 57 F.3d at 479; *see also Carlton v. Jondreau*, 76 F. App'x 642, 643 (6th Cir. 2003). I find that defendant Ward is entitled to judgment in his favor as a matter of law on plaintiff's Due Process Clause claims.

### VI.     Retaliation

Plaintiff alleges that Warden Jones retaliated against him by transferring him to RCF and that defendant Ward retaliated against him by damaging his typewriter. Upon review, I find that defendants are entitled to judgment in their favor as a matter of law on plaintiff's retaliation claims.

On summary judgment, a plaintiff asserting a First Amendment retaliation claim must present evidentiary proof on which a reasonable trier of fact could find (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*); *see also Lustig v.*

_____

[7]Numerous state post-deprivation remedies were available to him plaintiff. A prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. (docket # 18, Ex. A, ¶ B). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. *See* Mich. Comp. Laws § 600.6419(1). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a).

*Mondeau*, 211 F. App'x 364, 372 (6th Cir. 2006). The plaintiff has the burden of proof on all three elements. *See, e.g., Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

Plaintiff alleges that his November 2005 transfer from DRF was retaliatory. He identified Grievance Number DRF-05-10-1490-03C as his protected conduct. A prisoner's filing of a grievance can constitute protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Scott v. Stone*, 254 F. App'x 469, 472 (6th Cir. 2007).

The second element of a retaliation claim is an adverse action against plaintiff that would deter a person of ordinary firmness from engaging in that conduct. It is well established that "a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Dep't of Corrections*, 196 F. App'x 350, 358 (6th Cir. 2006) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir.2005)). A transfer from one prison to another generally "cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." *Hix v. Tenn. Dep't of Corrections*, 196 F. App'x at 358. "[T]he transfer of a prisoner may rise to the level of unconstitutional retaliation where there are foreseeable consequences to the transfer that would inhibit the prisoner's access to courts." *Id.* Plaintiff presented no evidence of such "aggravating circumstances." I will assume for analytical purposes that whatever damage plaintiff's typewriter may have sustained would satisfy the second element, but that his transfer would not.

Finally, under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue. The plaintiff must show that the decision to transfer him to RCF was motivated, at least in part, by the plaintiff's protected activity.

*Thaddeus-X*, 175 F.3d at 399; *see Skinner v. Bolden*, 89 F. App'x 579 (6th Cir. 2004) ("[C]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."). Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *Thaddeus-X*, 175 F.3d at 399; *see Smith v. Campbell* 250 F.3d 1032, 1038 (6th Cir. 2001). No reasonable trier of fact confronted with this record could find in plaintiff's favor on the causation component. He presented no evidence that his transfer from DRF was motivated in any way by his grievance. His transfer came in response to a request initiated by RCF officials. Defendant Ward had no knowledge of plaintiff's grievance against Warden Jones. Ward's actions on November 13, 2005, could not have been motivated by the grievances that plaintiff filed at a later date. I find that defendants are entitled to judgment in their favor was a matter of law on plaintiff's retaliation claims.

## VII.    Qualified Immunity

Alternatively, I find that defendants are entitled to qualified immunity on plaintiff's claims for damages against them in their individual capacities. "The purpose of the qualified immunity defense is to protect public officials from undue interference with their duties and from potentially disabling threats of liability." *Perez v. Oakland County*, 466 F. 3d 416, 426 (6th Cir. 2006). When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *See Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009); *Hayes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007).

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818; *see Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009). The question whether qualified immunity attaches to an official's actions is a purely legal issue for the court. *See Everson*, 556 F.3d at 494; *Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), endorsed a two-prong analysis for addressing qualified immunity issues. The first prong is whether the plaintiff has alleged and supported with evidence[8] facts showing that the defendant's conduct violated a constitutional or statutory right. *Saucier*, 533 U.S. at 201; *see Scott v. Harris*, 550 U.S. 372, 376 (2007); *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007). The second prong of the qualified immunity inquiry is whether the right was "clearly established at the time of the defendant's alleged misconduct. *Saucier*, 533 U.S. at 201. Judges are permitted to exercise their "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009); *see Waeschle v. Dragovic*, 576 F.3d 539, 543-44 (6th Cir. 2009). Here, I find that the sequence endorsed by the Court in *Saucier* is appropriate. Defendants are entitled to judgment in their favor on the first

---

[8]A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. *See Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 62 (1st Cir. 2004). At the summary judgment stage, a plaintiff may not rely on his pleadings. Rather, the issue is whether "the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004); *see Merriweather v. Zamora*, 569 F.3d 307, 315 (6th Cir. 2009).

prong of the qualified immunity analysis on all plaintiff's federal claims for the reasons previously stated herein.[9]

Assuming *arguendo* that plaintiff had been able to satisfy the initial requirement under *Saucier*, he would nonetheless fall short of showing that the right each claims a defendant violated was "clearly established" such that a reasonable official in the each defendant's position, at the time the act was committed, would have understood that his behavior violated that right. 533 U.S. at 201. "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 129 S. Ct. at 822. The Supreme Court's decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004), examined the underlying purpose of requiring that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198. The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201); *see Silberstein v. City of*

---

[9]Defendants argue that plaintiff failed to satisfy the "second prong[] of the *Saucier* test" (Defendant Ward's Brief at 7, docket # 23; Defendant Jones's Brief at 10, docket # 37). Defendants did not address the Sixth Circuit's *Thaddeus-X* decision which clearly established a prisoner's right against retaliation for the protected conduct of filing a non-frivolous grievance. *See Thadeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (*en banc*). Accordingly, the discussion of the second prong of the qualified immunity analysis which follows does not encompass plaintiff's retaliation claims.

*Dayton*, 440 F.3d 306, 316 (6th Cir. 2006). "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'" *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 199); s*ee Perez*, 466 F.3d at 428 ("Because most legal rights are clearly established at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'"). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Nadar v. Blackwell*, 545 F.3d 459, 473 (6th Cir. 2008) ("[Q]ualified immunity applies unless *any officer* in the defendant's position would have clearly understood that he was under an affirmative duty to have refrained from such conduct."). "Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201). Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional,[10] in light of preexisting law, the unlawfulness must be apparent. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). If judges are in disagreement on an issue at the time the defendant acted, it is "unfair" to later subject the defendant to monetary damages "for picking the losing side in the controversy." *Pearson*, 129 S. Ct. at 823. "Ordinarily, a Supreme Court or Sixth Circuit decision on point is necessary." *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007); *see Jackson v. Schultz*, 429 F.3d 586, 592 (6th Cir. 2005). The court must focus

---

[10]"Of course, in an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau*, 543 U.S. at 199.

on whether, at the time the defendant acted, the right asserted was "clearly established" by the decisions of the Supreme Court or the Sixth Circuit. *See Reynolds v. City of Anchorage*, 379 F.3d 358, 366 (6th Cir. 2004); *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002). "'[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Armstrong*, 432 F.3d at 699 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)); *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) ("Qualified immunity leaves government authorities 'ample room for mistaken judgments.'") (quoting *Scott v. Clay County*, 205 F.3d 867, 873 n. 9 (6th Cir. 2000)). "If reasonable officials could disagree on the issue, immunity should be recognized." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999); *see Akers*, 352 F.3d at 1042. "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Saylor v. Board of Educ.*, 118 F.3d 507, 514 (6th Cir. 1997); *see Gragg*, 289 F.3d at 964. "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key*, 179 F.3d at 1000 (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Perez*, 466 F.3d at 427.

Plaintiff did not have a constitutional right against having his prison cell searched. *See Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984); *see also United States v. Smith*, 526 F.3d 306, 309 (6th Cir. 2008). Plaintiff did not address defendant Jones's claim of qualified immunity. (*see* docket #'s 62, 63). He has not identified any case where a court has found a violation of the Eighth

Amendment's Cruel and Unusual Punishments Clause by a warden where smoking was prohibited in prison's housing units, the plaintiff was housed in a tobacco free cell, and prisoners were punished for violating the rules against smoking. Plaintiff has not shown that defendants' actions violated his clearly established constitutional rights. Defendants are entitled to entry of judgment in their favor as a matter of law on plaintiff's claims for damages against them in their individual capacities on the alternative basis of qualified immunity.

**VIII.    Supplemental Jurisdiction**

Plaintiff asks the court to exercise jurisdiction over a purported state-law claims. "Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). Generally, where all federal claims have been dismissed, federal courts decline to exercise supplemental jurisdiction over a plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009); *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008). There is no reason in this case to depart from the general rule.

**Recommended Disposition**

For the reasons set forth herein, I recommend that defendants' motions for summary judgment (docket #'s 22, 36) be granted, that the court, in its discretion, decline to exercise supplemental jurisdiction, and that an order implementing these recommendations be entered. I further recommend that a separate and final judgment be entered in defendants' favor on all plaintiff's federal claims.


Dated:  October 8, 2009                /s/  Joseph G. Scoville
                                       United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).